FILED

2010 Jul-02  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **FRONTIER DEVICES, INC.,** a Corporation, | : |
| | : |
| **Plaintiff,** | : |
| | : **CIVIL ACTION NO.** _____ |
| **v.** | : |
| | : |
| **MINSURG CORPORATION, INC.,** a Corporation, **MINSURG INTERNATIONAL, INC.** f/k/a/ **ORTHOPEDIC DEVELOPMENT CORPORATION,** a Corporation | : |
| | : |
| | : |
| | : |
| | : |
| **Defendant.** | |

## COMPLAINT

Plaintiff, Frontier Devices, Inc. ("Frontier Devices") for its complaint against minSURG Corporation and minSURG International, Inc., f/k/a Orthopedic Development Corporation (referred to collectively as "minSURG" or "Defendants") alleges as follows:

### NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. §§ 2201(a) and 2202 and the patent laws of the United States, 35 U.S.C. §271, *et seq*; and unfair competition and false advertising arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### PARTIES

2.      Frontier Devices is a corporation organized under the laws of the State Alabama with its principal place of business at 153-A Cahaba Valley Parkway, Pelham, Alabama 35124.

3.      minSURG International, formerly known as Orthopedic Development Corporation, is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 611 Druid Road East, Suite 200, Clearwater, Florida 33756.

4.      minSURG Corporation is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 611 Druid Road East, Suit 200, Clearwater, Florida 33756.   On information and belief, minSURG Corporation is a wholly owned subsidiary of minSURG International.

## JURISDICTION AND VENUE

5.      This Court has subject mater jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 as it involves substantial claims arising under the Patent laws of the United States.   Diversity jurisdiction also exists under 28 U.S.C. § 1332 and the amount at issue is greater than $75,000.00.

6.      Personal jurisdiction and venue are proper in this district under 28 U.S.C. §§ 1391 and 1400(b) because minSURG, acting through its employees and agents, has expressly charged in this judicial district that Plaintiff Frontier Devices

is infringing the U.S. Patent No. 7,708,761 B2 ("the '761 patent").  Further,

minSURG maintains continuous and systematic commercial contacts within the

State of Alabama and has purposefully solicited business in the State of Alabama,

negotiated directly with hospitals and/or physicians in the State of Alabama and,

on information and belief, entered into contracts with Alabama businesses resulting

in the distribution of Defendants' goods throughout the State and this District.

## PARTIES' BACKGROUND

7.    In 2003, Orthopedic Development Corporation ("ODC") was

incorporated in Florida.  James Doulgeris ("Doulgeris") and Dr. David Petersen

("Petersen") were the initial officers and/or directors of ODC.

8.    In 2004, minSURG Corporation was incorporated in Florida. As with

ODC, Doulgeris and Petersen were the initial officers and/or directors of

minSURG Corporation.

9.    minSURG markets a bone dowel for facet fusion under the name

"TruFUSE."  The TruFUSE bone dowel consists of a cylindrical design with a

slight taper.  minSURG also markets instruments to be used with the TrueFUSE

bone dowel.  These instrument are modifications of instruments regularly used in

orthopedic surgery generally, and minimally invasive spinal surgery specifically.

10.    In September 2005, Petersen, as inventor, filed a utility patent

application, serial number 11/232,519 ("the '519 application"), entitled "Spinal

Plug for Minimally Invasive Facet Joint Fusion System."   On May 4, 2010, a patent was issued on this application and assigned U.S. Patent No. 7,708,761 ("the '761 patent").   Attached hereto as Exhibit A is a true and correct copy of the '761 patent.  Petersen assigned all rights and interest in the '761 patent to ODC.

11.   In June 2008, minSURG International was incorporated in Florida.  In June 2009, minSURG International voluntarily dissolved and abandoned the name minSURG International name.   In the same month, ODC adopted the name minSURG International and abandoned the ODC name.  Consequently, minSURG International now owns the '761 patent.

12.   Frontier Devices, Inc. was incorporated in August 2007.   Frontier Devices is involved in the manufacture and distribution of medical implant products, including machined allograft cortical bone dowels designed for insertion into facet joints for fusing the joints together.  In 2008, Frontier Devices developed a proprietary system for implanting bone dowels that are currently marketed under the name "Fusio.".   The Fusio system incorporates unique instruments and procedures.  The Fusio system arose from a desire to address the problem of the TruFUSE graft "backing out," i.e., working its way out of the facet joint after a seemingly successful implantation.  This is a common problem experienced by surgeons using the TruFUSE product.

13.   Over the years, Frontier Devices has developed extensive and valuable relationships with physicians, hospitals, tissue banks, local and regional distributors and sales representative, and other important stakeholders in the industry.

## BACKGROUND OF SPINAL FUSION TECHNIQUES

14.   Back pain is one of the most common ailments in adults. For decades physicians have utilized techniques for fusing segments for the spine to relieve spinal pressure and pain. Many of these techniques involve the use of bone grafts and tissue bank allografts in various configurations and locations, to encourage spinal fusion. Of particular interest here, cylindrical bone dowels have historically been used routinely in fusion procedures and made available by several companies for this purpose.

15.   One recognized location for surgical spinal fusion is at the spinal facet joints. Facet fusions can be carried out alone or in combination with other surgical techniques.

16.   Since at least the 1950s, surgeons have reported the successful fusion of spinal facet joints following the insertion of bone grafts into the joints.

17.   In the 1980s and 1990s, increasing emphasis was placed on the development of techniques for minimally invasive surgery, including spinal fusion.

Numerous percutaneous, endoscopic, laparoscopic and arthroscopic techniques were developed.

18.   By 1993, a percutaneous technique for spinal facet fusion, which involved drilling a hole directly into the facet joint and inserting a cylindrical bone dowel, had been developed and reported in the literature.  *See* Stein M., *et al.*, Percutaneous facet joint fusion: preliminary experience, *J. Vasc. Interv. Radiol.* 1993 Jan-Feb; 4(1): 69-74 (hereinafter the Stein Paper).

## DEVELOPMENT OF THE TRUFUSE
## PRODUCT AND PROSECUTION OF THE '761 PATENT

19.   Upon information and belief, Petersen is an orthopedic surgeon practicing in the Tampa, Florida area.  He served at all relevant times as Chairman of the Board and Chief Medical Officer for minSURG.

20.   Upon information and belief, Petersen was aware of developments in the area of minimally invasive spinal surgery.

21.   On November 22, 2004, Petersen filed U.S. Patent Application No. 10/992,270 ("the '720 application") for "Minimally Invasive Facet Joint Fusion." This application described an arthroscopic technique for fusing the facet joint by drilling or boring a hole or holes perpendicularly through the joint and inserting bone grafts through these holes.

22.     Petersen was aware of the Stein Paper, and disclosed its existence and potential relevance to the United States Patent and Trademark Office ("USPTO") in an Information Disclosure Statement filed in connection with the '720 application.

23.     Upon information and belief, Petersen became dissatisfied with the technique described in the '720 application.   He sought to develop instead a technique based on the one described in the Stein Paper.   This would involve the drilling of a hole directly into, rather than perpendicularly through, the facet joint, for the insertion of a bone graft.

24.     In September 2005, Petersen filed the '519 application for "Spinal Plug for a Minimally Invasive Facet Joint Fusion System."   This application claimed to be a continuation in part of the '720 application, though it described a different facet fusion technique, one based on the Stein Paper.   The claims of this new application were limited to the use of a bone dowel of a specified cylindrical shape.

25.     On or about March 6, 2007, the USPTO issued a non-final rejection of the '720 application based on a variety of problems, including obviousness in light of previously patented surgical techniques and devices.   Petersen and ODC abandoned the '720 application and proceeded with only the '519 application.

26.    Petersen and ODC filed a new Information and Disclosure Statement in connection with the '519 application listing several of the same references cited in connection with the '720 application, but failing to include the Stein Paper.

27.    After their failure to disclose clearly relevant prior art was publically pointed out in connection with prior litigation, Petersen and ODC filed another Information and Disclosure Statement in connection with the '519 application. However, rather than calling the attention of the USPTO to the importance of the Stein Paper, Petersen and ODC submitted the reference to the USPTO in combination with more than one hundred other new references, many of which were duplicative or irrelevant.  In so doing, Petersen and Stein relegated the Stein Paper to the proverbial needle in a haystack.  Upon information and belief, this was done in a continued effort to hide from the USPTO the clear import of the Stein Paper.

28.    Over the course of the prosecution of the patent, including in response to several rejections by the examiner, minSURG amended its claims or substituted new claims, effectively narrowing the scope of the proposed patent.

29.    Eventually, and without the benefit of proper disclosure of information regarding the Stein Paper, on or about July 2, 2009, the USPTO indicated that it would issue a patent based on the '519 application.

30.     On or about August 7, 2009, the Stein Paper was finally brought directly to the attention of the USPTO by a third party.  The USPTO promptly withdrew its notice of issuance to permit further evaluation of the patent.

31.     In the course of further evaluation, minSURG again modified and narrowed the claims of the patent.  Ultimately, all of the proposed claims were limited to techniques involving the use of a minimally invasive "portal."  This was an obvious attempt to avoid the preclusive effects of the Stein Paper and other similar facet fusion references, by focusing on the use of a portal, rather than on the minimally invasive placement of an allograft dowel in the facet joint, a concept already clearly described in the Stein Paper.

32.     As part of this strategy, minSURG resurrected drawings and concepts from the '720 application which had been previously discarded, including drawings depicting the use of drilling or cutting instruments placed through a "portal" or tube.  minSURG also indicated that a "drill guide" could be placed through the portal to assist in the drilling process.

33.     Once again, however, minSURG failed to comply with its duty of candor to the USPTO.  In particular, it failed to disclose numerous published references that the use of a "minimally invasive portal" to perform spinal surgery, including surgery on the facet joints, was well-known to spinal surgeons by the

mid to late 1990s.  In light of these references and the Stein Paper, the "technique" now claimed in the '519 application was obvious.

34.    On May 4, 2010, the '519 application was approved, and the '761 patent issued.  In the course of approving the application, however, the examiner required further amendment to the claims, limiting the scope of each to "an arthroscopic type portal facet surgical method."  Such a method was described in the patent specification as involving "a small incision and progressive dilation of the intervening soft tissue," in order to place a cylindrical portal through which the joint is accessed and surgical tools placed.  The examiner also issued reasons for allowance, focusing on the distinction between a portal-based approach and what he perceived to be more "open" surgical approaches to the facet joint described in the prior art.

35.    The plain language of the claims as allowed therefore restrict the scope of the patent to a surgical technique involving progressive dilation and placement of a tube or "portal" to provide the only access to the facet joint, and exclude any other techniques for access to the joint, such as an open or mini-open procedure which would allow direct visualization or contact with the joint.  The prosecution history makes it clear that these limitations were critical to, and indeed were the basis of, the arguments for allowance made to the USPTO.

**RECENT EVENTS AND MINSURG'S CAMPAIGN OF HARASSMENT**

36.   Having succeeded in convincing the USPTO to issue a patent on this basis, minSURG has now reversed course and is attempting to convince the marketplace that its patent in fact covers any facet fusion surgical technique that involves an allograft dowel and a drill guide, including classic "open" procedures.

37.   In the vast majority of cases, the Fusio system is used in an open or semi-open surgical procedure which does not involve the use of progressive dilation or an "arthroscopic portal." Upon information and belief, the same is true of many other competing facet fusion allografts on the market. The claims of the '761 patent cannot reasonably be interpreted to cover such open and semi-open procedures, particularly in light of the prosecution history discussed above. Accordingly, the '761 patent, even if valid, does not bar the manufacture and sale of the Fusio system and other competing facet joint fusion allografts, as these products are useful in numerous non-infringing and medically beneficial procedures.

38.   minSURG is fully aware of the limitations and deficiencies of the '761 patent. Nonetheless, consistent with its past pattern of behavior, minSURG has embarked on a campaign to improperly leverage the '761 patent in order to interfere with Frontier Devices' business and hamper fair competition in the marketplace.

39.    In particular, minSURG has already accused Frontier Devices of infringing the '761 patent, including via a letter from its intellectual property counsel attached as Exhibit B.

40.    Of even greater concern, representatives of minSURG have approached doctors and hospitals who are established customers of Frontier Devices and have falsely represented to these customers that minSURG has filed litigation and obtained an "injunction" against Frontier Devices.   minSURG's agents have falsely represented that, as a result of the injunction, the Fusio system will soon be completely unavailable and have urged these customers to purchase the TrueFUSE product from minSURG instead.

41.    minSURG has also directed a similar campaign against Frontier Devices' distributors, sending them letters accusing them of infringement and threatening them with suit.   One such letter to a distributor states that the distributor is:

> directly infringing and/or inducing the infringement of the '761 Patent.
> The minSURG patent covers the use of a facet joint fusion plug
> (***without regard to size/shape/etc/***) that is inserted through a portal
> (***e.g. a drill guide***) to be placed in between the facet joints.   The
> minSURG patent also protects surgeries which are performed stand-
> alone or adjunctively to other surgical procedures.

*See* Letter to Mr. Oscar Hernandez of Medical Solutions of Texas from Don J. Pelto, June 16, 2010, attached hereto as Exhibit C (emphasis in original).   The

letters conveniently omit any mention of the minimally invasive, arthroscopic portal-type limitations in the patent.  Indeed, the letter falsely indicates that the use of a facet fusion plug and drill guide even in a completely open procedure would violate the patent.  This falsehood is compounded by the assertion that the use of facet fusion as an adjunct to other surgical procedures would be covered by the patent.  In fact, this would almost never be true, as such combined procedures almost always involve open surgical access to the spine, including the facet joints.

42.    The letters sent by minSURG grossly overstate the scope of the '761 patent and are obviously designed to stymie competition in the workplace and to intimidate Frontier Devices' distributors and customers into ceasing further business with frontier Devices.

43.    minSURG has no legitimate basis for making such harmful and derogatory statements regarding Frontier Devices and its products.  minSURG has made such statements without objective basis or justification, and for the sole purpose of stymieing competition, deceiving the public, interfering with Frontier Devices' established business relationships, and preventing the Plaintiff from marketing a lawfully competitive product.  The business of Frontier Devices has been, and will continue to be damaged and irreparably harmed by this conduct.

44.    minSURG has directed similar attacks on other competitors in the facet joint fusion market.

## COUNT I

### *DECLARATION OF NON-INFRINGEMENT*
### *OF U.S. PATENT NO. 7,708,761 B2*

Frontier Devices incorporates herein and realleges as though fully set forth in this paragraph the averments of paragraphs 1-44 of this Complaint.

45.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1 et. seq. concerning Frontier Devices' non-infringement of the claims of the '761 patent.

46.     Frontier Devices is entitled to a judicial declaration that it has not infringed and does not infringe, directly or indirectly, by inducement or by contribution, upon any valid, enforceable claim of the '761 patent.

## COUNT II

### *DECLARATION OF INVALIDITY*
### *OF U.S. PATENT NO. 7,708,761 B2*

47.     Frontier Devices incorporates herein and realleges as though fully set forth in this paragraph the averments of paragraphs 1-46 of this Complaint.

48.     There is an actual and justiciable controversy between the parties concerning the invalidity of the patent asserted against Frontier Devices for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 et. seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

49.    Frontier Devices is entitled to a judicial declaration and order that the '761 patent is invalid.

## COUNT III

### *DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 7,708,761 B2*

50.    Frontier Devices incorporates herein and realleges as though fully set forth in this paragraph the averments of paragraphs 1-49 of this Complaint.

51.    There is an actual and justiciable controversy between the parties concerning the enforceability of the patent asserted against Frontier Devices due to inequitable conduct during the prosecution of the '761 patent

52.    Frontier Devices is entitled to a judicial declaration and order that the '761 patent is unenforceable.

## COUNT IV

### *UNFAIR COMPETITION/FALSE ADVERTISING*

53.    Frontier Devices incorporates herein and realleges as though fully set forth in this paragraph the averments of paragraphs 1-52 of this Complaint.

54.    minSURG has made and continues to make, in commercial advertising and promotion, representations of fact about its own products, and about the products of Frontier Devices, which were and continue to be false, deceptive and misleading.

- 15 -

55.    Such misrepresentations are material, and have either deceived, or had the capacity to deceive, and continue to deceive, a substantial segment of customers and potential customers.

56.    The products at issue have been sold and continue to be sold in interstate commerce.

57.    The aforementioned acts have violated the rights of Frontier Devices and caused damage in an amount to be determined at trial.

58.    By its actions, minSURG has irreparably injured the interest of Frontier Devices, and such irreparable injury will continue unless minSURG is enjoined by this Court from further violation of Frontier Devices' rights, for which its has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREAS, Plaintiff Frontier Devices prays that this Court grant the following relief and judgment:

A.    A declaration and judgment that Frontier Devices has not infringed, induced the infringement, or contributed to the infringement of any valid claim of U.S. Patent No. 7,708,761, either literally or under the doctrine of equivalents;

B.    A declaration and judgment that every asserted claim of U.S. Patent No. 7,708,761 is invalid;

C.    A declaration and judgment that every asserted claim of U.S. Patent No. 7,708,761 is unenforceable due to inequitable conduct and/or patent misuse;

D.    Preliminary and permanent injunctive relief barring Defendants and their officers, employees, agents, representatives, attorneys, and others acting on their behalf, from representing to anyone, either directly or indirectly, that Frontier Devices has infringed or is infringing U.S. Patent No. 7,708,761;

E.    Preliminary and permanent injunctive relief barring Defendants and their officers, employees, agents, representatives, attorneys, and others acting on their behalf, from making the false, deceptive or misleading representations of facts described above;

F.    An award of compensatory damages and Defendants' profits, plus costs and interest.

H.    This action is declared exceptional under 35 U.S.C. § 285 and/or 35 U.S.C. § 1117, and judgment be entered awarding Frontier Devices its costs and reasonable attorneys' fees, and such other relief as may be appropriate; and

I.      Such other relief as this Court may deem just and proper.

DEMAND FOR JURY TRIAL

Pursuant to Fed R. Civ. P. 38, Frontier Devices demands trial by jury of all

issues so triable.

DATED:  July 2, 2010

Respectfully submitted,

Edward S. Sledge, IV,
ASB-6239 D60S
C. Brandon Browning,
ASB-8933-W78C
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North
Regions/Harbert Plaza, Suite 2400
Birmingham, Alabama 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
esledge@maynardcooper.com
bbrowning@maynardcooper.com

Attorneys for Frontier Devices, Inc.

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

minSURG International, Inc.
611 Druid Road East, Suite 200
Clearwater, Florida 33756

minSURG Corporation, Inc.
611 Druid Road East, Suit 200
Clearwater, Florida 33756